**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

KRISTIE SPANGLER NOYES,      :
                                   :

      Appellant-Claimant,      :

                                   :

                                   :         C.A. No.: K21A-04-001 JJC

                                   :

      v.                         :

                                   :

STATE OF DELAWARE,         :

                                   :

                                   :

      Appellee.             :

                                   :

Submitted: March 1, 2022
Decided:  April 28, 2022

## ORDER

*Upon Consideration of Appellant's Appeal from the Decision of the State Employee Benefits Committee –* **AFFIRMED**

On this 28th day of April 2022, upon consideration of the record and the briefing by the parties, it appears that:

1.      Appellant Kristie Spangler Noyes appeals a decision of the State Employee Benefits Committee (hereinafter "SEBC" or the "Committee"). The Hartford ("Hartford"), Delaware's short-term disability carrier for state employees, had denied Ms. Noyes' claim for benefits for the maximum period of supplemental short-term disability benefits ("STD benefits") permitted by 29 *Del. C.* § 5253(b)(4).[1]

---

[1] *See* 29 *Del. C.* § 5253(b)(4) (providing that "an employee may utilize annual, sick, parental, compensatory, or donated leave to supplement short-disability benefits to equal 100% of pre-disability creditable compensation for 182 calendar days").

After Ms. Noyes proceeded through multiple levels of appeal, the SEBC agreed that she was not entitled to those benefits. She now appeals the SEBC's denial.

2. Before Ms. Noyes claimed STD benefits, she worked as a school psychologist in the Capital School District. Her last day of work was December 14, 2018. After she filed her claim, Hartford approved Ms. Noyes for STD benefits based upon certain mental health conditions. Her initial period of benefits began on December 15, 2018, and continued until February 15, 2019.

3. Ms. Noyes then applied to extend her benefits for the full 182 calendar days which was the maximum length of STD benefits available for a claimant with a continuing disability. After receiving her claim, Hartford notified Ms. Noyes that she had to meet the definition of total disability during the extended period to receive continuing benefits.[2] Hartford's clinical staff then reviewed her medical information and determined that she did not qualify beyond February 15, 2019, and denied her application.[3]

4. Ms. Noyes then filed her first appeal of Hartford's denial, as permitted by 29 *Del. C.* § 5258.[4] As a result, Hartford conducted a second review of Ms. Noyes' claim to determine if she qualified for STD benefits and again denied them. This second review included an independent medical document review of Ms. Noyes' disability claim file and an examination of records provided by Mental Edge Counseling, LLC, all per Ms. Noyes' request.[5] At Hartford's request, Dr. Brandon

---

[2] *See* Appellee's Ans. Br. Ex. A (D.I. 14) (explaining Hartford's initial review of Ms. Noyes' medical information which showed symptom stabilization and no global impairment).

[3] Appellee's Ans. Br. Ex. B (D.I. 14) (hereafter "Level I Decision").

[4] *See* 29 *Del. C.* § 5258 (providing "[t]he carrier shall notify a participating employee of its determination of the employee's eligibility for short-term disability benefits in writing by certified mail . . . .[w]ithin 90 days . . . an aggrieved participating employee may appeal any denial of disability benefits by filing a written petition . . . with the carrier."). The State's insurance carrier, Hartford, must review the application and any additional information provided by the claimant. This process is referred to as a Level I appeal. In a Level I appeal, the statute permits Hartford to reverse all or any part of its initial decision to deny benefits. *Id.*

[5] Level I Decision at 2.

2

Erdos with Professional Disability Associates performed a record-review. He opined that there was no evidence of impairment, restrictions, or limitations after February 15, 2019 that related to her mental health conditions.[6] Hartford again denied her request for benefits.

5. Ms. Noyes then appealed Hartford's denial to the Statewide Benefits Office ("SBO").[7] After reviewing her claim file and interviewing Ms. Noyes, the SBO's Appeals Administrator agreed that Hartford properly denied her STD benefits after the initial period.[8]

6. Ms. Noyes then appealed the SBO's denial to the Committee.[9] At some point during the multi-level appeals process, Ms. Noyes also had applied for social security disability benefits. To determine her eligibility for social security, Dr. Joseph Keyes conducted a psychological evaluation of Ms. Noyes in December 2019. The doctor diagnosed her with depression, anxiety, and PTSD.[10] At the time Ms. Noyes filed her SEBC appeal she did not yet have Dr. Keyes' report so she requested that the SEBC place the matter on hold until she received it. She wanted to present the report to the Committee together with the other documentation.[11] After she

---

[6] Level I Decision at 2-3 (explaining that "all medical documentation in [Ms. Noyes'] file was forwarded to Professional Disability Associates to coordinate the review and the reviewer was asked to comment on [Ms. Noyes'] overall psychiatric functionality after 2/15/2019").

[7] *See* 29 *Del. C.* § 5258 (permitting an aggrieved employee to file a second-level appeal of denial of disability benefits by filing a written petition with the Appeals Administrator). This is referred to as a Level II appeal. The statute requires the Appeals Administrator, an officer in the Division of Statewide Benefits, to conduct an informal review of the claim, issue a final written decision, and mail the decision to the employee. *Id.*

[8] Appellee's Ans. Br. Ex. C (D.I. 14) ("Level II Decision").

[9] *See* 29 *Del. C.* § 5258 (providing an aggrieved employee with the ability to appeal to the SEBC within 20 days of the notice of determination by setting forth, with particularity, the grounds for appeal). If the Level II Appeals Administrator affirms the carrier's decision to deny disability benefits, the aggrieved party may appeal to the Committee. This process is known as the Level III appeal. The Committee may delegate the hearing responsibility to a hearing officer from the Department of Human Resources or it may decide to hear the appeal directly. *Id*. Here, the Committee delegated the responsibility to a hearing officer.

[10] Appx. to Appellant's Op. Br. at 24 (D.I. 13).

[11] SEBC Decision ¶ 9.

presented the report to the SEBC, the Committee set a hearing date with a hearing officer.[12]

7.      At her SEBC hearing, the hearing officer asked Ms. Noyes whether she had provided all available documentation to support her claim.[13]  Ms. Noyes answered affirmatively.[14]  The hearing officer then explained to Ms. Noyes that Dr. Keyes' report did not address whether she could perform the essential functions of her occupation during the extended benefit period.  The hearing officer also explained that an opinion from a medical provider would be necessary to demonstrate eligibility for STD benefits.[15]  Because the record was devoid of evidence supporting her inability to perform the essential functions of her employment between February 15, 2019 and August 16, 2019,  the hearing officer offered to contact Dr. Keyes directly to see if he had further information that *could support her claim*.[16]  Ms. Noyes agreed and expressed her approval.[17]  She also signed a release that specifically authorized the hearing officer to contact Dr. Keyes.[18]

8.      The hearing officer then contacted Dr. Keyes to ask him whether his psychological evaluation for purposes of social security disability benefits included an assessment of Ms. Noyes' ability to perform the essential duties of her occupation during the relevant period.[19]  According to the hearing officer, Dr. Keyes explained that nothing in his evaluation or the related records addressed that issue.[20]  As a result, the hearing officer had no evidence before her that demonstrated that Ms. Noyes' mental health conditions prevented her from performing the essential duties of her

---

[12] *Id.* ⁋⁋ 10-11. The hearing was conducted on September 17, 2020.
[13] Hearing Tr. at 5:7.
[14] *Id.* at 5:8.
[15] *Id.* at 6:17.
[16] *Id.* at 8-9, 13 (emphasis added).
[17] *Id.* at 18:7 (Ms. Noyes: "Okay. That would be good.").
[18] *Id.* at 13; Signed Authorization for Release of Protected Health Information (Oct. 16, 2020).
[19] SEBC Decision ⁋ 14.
[20] *Id.* ⁋ 14.

occupation. Accordingly, she recommended that the SEBC deny her claim.[21] The Committee followed suit by adopting the hearing officer's recommendations and Ms. Noyes timely appealed that decision to the Superior Court.

9. On appeal, Ms. Noyes raises two arguments. First, Ms. Noyes contends that the SEBC erred as a matter of law by adopting a hearing officer's recommended findings under circumstances where the hearing officer contacted Dr. Keyes outside her presence. In other words, Ms. Noyes contends that the hearing officer conducted inappropriate, inquisitorial fact finding which violated her due process rights. Second, Ms. Noyes argues that the SEBC's decision is not supported by substantial evidence because Hartford conducted its medical records review before Dr. Keyes performed his social security disability examination. As a result, Ms. Noyes contends that the Committee failed to consider new evidence of her disability when it denied her benefits.

10. In response, the SEBC contends that the decision should be upheld because Ms. Noyes failed to demonstrate that her mental health conditions prevented her from performing the essential functions of her employment during the extended benefits period. Additionally, the SEBC emphasizes that it considered Dr. Keyes' psychological evaluation report. It stresses that nothing in the report addressed whether Ms. Noyes could perform the essential duties of her occupation. As a result, the Committee contends that the record contained no evidence to support a Committee finding of Ms. Noyes' total disability during the relevant period. Finally, the SEBC contends that the hearing officer did not engage in inappropriate fact finding because Ms. Noyes had notice of the planned call to Dr. Keyes, consented to it, and encouraged it.

---

[21] *Id.* ¶¶ 11, 16.

11.     The Superior Court's review of the SEBC's findings is similar to its review of other agency decisions; it is on the record.[22] Namely, the Court's function is limited to determining whether the Committee's decision was free from legal error and was supported by substantial evidence.[23] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[24] When reviewing the record for substantial evidence, the Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[25] Absent errors of law, which are reviewed *de novo*, a decision of the SEBC supported by substantial evidence will be upheld unless the Committee abused its discretion.[26]

12.     The General Assembly has provided the SEBC broad discretion to determine whether a claimant is eligible for disability benefits.[27] Under the State's disability insurance framework, an employee found to be mentally or physically unable to perform the essential functions of his or her occupation is entitled to short-term or long-term benefits.[28] To qualify for STD benefits, the claimant must demonstrate that she is disabled, meaning – that due to the claimant's mental condition, she was prevented from performing the essential duties of her occupation during the relevant period.[29] The SEBC's regulations define "occupation" generally

---

[22] 29 *Del. C.* § 5258(6) (providing that the Committee's final action may be appealed to the Superior Court within 30 days, and the appeal shall be on the record); *Mossinger v. State*, 2015 WL 2379079, at *4 (Del. Super. Apr. 17, 2015).

[23] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015) (citing *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 783 (Del. 2011)).

[24] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[25] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 782 (Del. 2011).

[26] *Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).

[27] *See* 29 *Del. C.* § 5253(b)(1) (granting the State Employee Benefits Committee the authority to adopt regulations to determine eligibility).

[28] *Id.*; *Mossinger*, 2015 WL 2379079, at *5.

[29] 29 *Del. C.* § 5253(b)(1).

6

by referring to the category of work she performed, not the specific job she was performing for her specific employer.[30]

13.     At the outset, the SEBC did not violate Ms. Noyes' due process rights when the hearing officer contacted Dr. Keyes with Ms. Noyes' permission.  As a general principle, it is improper for an administrative agency to base a decision on information outside of the record *unless the parties have notice*.[31]  From that general rule, it follows directly that an administrative fact finder may contact a third-party to seek additional facts intended to benefit a claimant if the parties have notice of and consent to the contact.    Here, the record undisputedly demonstrates that (1) Ms. Noyes had notice of the intended contact, (2) the hearing officer intended to benefit Ms. Noyes through the contact, and (3) Mr. Noyes consented to (and in fact encouraged) the contact.[32]  Namely, the hearing officer's purpose in contacting Dr. Keyes was to seek information that could support Ms. Noyes' claim.[33]   None of the

---

[30] *See id.* § 9602(b)(4) (enabling the SEBC to adopt rules and regulations for the general administration of employee benefit coverages); 19 *Del. Admin. Code* § 2007-2.0 (defining "occupation" as it relates to disability benefits under the Disability Insurance Program Rules and Regulations).

[31] *Delaware Alcoholic Beverage Comm'n v. Alfred I. Dupont Sch. Dist.,* 385 A.2d 1123, 1127 (Del. 1978) (finding no error, although the Commission heard evidence outside of the record, because such evidence provided no more information than the Commission had prior to receiving it) (emphasis added); *cf. Turbitt v. Blue Hen Lines*, *Inc.*, 711 A.2d 1214, 1216 (Del. 1998) (finding that an administrative agency's reliance upon information outside the record was error because it required notice to the parties and an opportunity to be heard).

[32] Hearing Tr. at 10:5-15.  The hearing officer told Ms. Noyes: "I need to get some clarification on, you know, specifically his medical opinion on your ability to perform the essential functions of your occupation during that period of time you're requesting short-term disability benefits." Ms. Noyes replied: "Okay. Do you need to send me a release form?" *Id.* at 12:25.  Ms. Noyes then completed a titled "Signed Authorization for Release of Protected Health Information" on October 16, 2020.  That authorization reads: "Person or Entity that has the health information to be released: Dr. Joseph Keyes, Ph.D."  Additionally, it provided, *inter alia*: "I [Kristie Noyes] authorize the Statewide Benefits Office and other State Delegates to release protected health information to: Faith Rentz, Disability Appeal Hearing Officer . . . . to support a claim for non-health benefits, such as disability benefits."

[33] SEBC Decision ¶¶ at 13-14 (noting that Ms. Noyes provided no documentation, information, or testimony supporting that she was unable to perform the essential duties of her occupation).

information harmed Ms. Noyes' position -- it just failed to benefit it. As a result, the hearing officer committed no legal error when she contacted the doctor. Likewise, the Committee did not err when it accepted the hearing officer's recommendation.[34] This consented-to contact in no way impaired Ms. Noyes' due process rights.

14. Given the due process provided Ms. Noyes, the Court must next review the record to determine if substantial evidence supported the Committee's decision. In this case, it does. Ms. Noyes primarily contends that the SEBC failed to consider new evidence of her disability because the Hartford's record-review physician did not have Dr. Keyes' report available when rendering his opinion. This does not follow, however, because when Hartford considered the records-review opinion, Dr. Keyes' report did not exist -- considering it was an impossibility. Moreover, Dr. Keyes' report, when rendered, did not offer an opinion that could have changed the outcome. Finally, and most germanely, *the SEBC* committed no error because the SEBC's hearing officer had the report at the time of her *de novo* hearing and fully considered it.

15. At each level of the appeal, Hartford, the SBO Appeals Administrator, and the Committee considered all documentation that Ms. Noyes provided them. The documentation included more than 600 pages of medical records from Mental Edge Counseling, records of sleep studies conducted by numerous doctors, the independent medical record review conducted on behalf of Hartford, and finally, Dr. Keyes' psychological evaluation report.[35] On appeal, when considering the totality of the evidence available to the SEBC, the record demonstrates that Ms. Noyes suffered from certain mental health conditions, but includes no competent medical evidence that supports Ms. Noyes' contention that she could not perform the essential duties

---

[34] *Id.* at 7.
[35] *Id.* ¶¶ 6-7.

of her occupation.   As a result,  Ms. Noyes failed to demonstrate  a total disability that justified extending her STD benefits.

16.   On balance, the record contains no competent evidence, much less substantial evidence, to support that Ms. Noyes' mental conditions prevented her from performing her duties during the relevant period.   Although the hearing officer contacted Dr. Keyes outside of the presence of the parties, Ms. Noyes had full notice that the hearing officer intended to call him, signed a release authorizing the hearing officer to do so, and encouraged the contact.   Accordingly, the SEBC committed no legal error when it adopted the hearing officer's recommendations and substantial evidence supported its position.

**NOW THEREFORE**, for the reasons stated, the SEBC's decision is free from legal error and was based upon substantial evidence of record.  Consequently, the Committee's decision must be **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & Serve Express*

9